**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **JAMARIUS HILL,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Case No. 3:19-cv-00452** |
| **SHERIFF DARON HALL, Davidson** | ) | **Judge Aleta A. Trauger** |
| **County Sheriff's Office, and** | ) | |
| **HERBERT H. SLATERY, III,** | ) | |
| **Tennessee Attorney General and** | ) | |
| **Reporter,** | ) | |
| | ) | |
| **Respondents.** | ) | |

## MEMORANDUM

Before the court is Jamarius Hill's Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (Doc. No. 1), challenging the constitutionality of Hill's continued pretrial detention at the Davidson County Correctional Development Center. For the reasons set forth herein, the court will deny the petition.

Also before the court is the Attorney General's request to be added as a respondent in this case under Rule 2 of the Rules Governing Section 2254 Cases in United States District Courts. The law is clear that Davidson County Sheriff Daron Hall, as "the person having custody over [the petitioner]," 28 U.S.C. § 2242, is the appropriate respondent in this case. *See also* 28 U.S.C. § 2243; *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004). However, having been granted leave to do so (Doc. No. 16), the State Attorney General's Office filed the Answer, presenting the State's position on the bail issue raised by the petitioner. In furtherance of the ends of justice, *see* Rule 2, Advisory Notes, that Attorney General's request will be granted, and the Clerk will be directed to add the Attorney General as a respondent.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On October 8, 2017, 16-year-old Debrianah Begley was shot and killed. On December 12, 2017, when he was also 16 years old, petitioner Jamarius Hill was arrested and charged with her murder and, in light of his youth, held in the Juvenile Detention Center. He was released a few days after his arrest, for lack of probable cause. (Doc. No. 1-2, at 5–6.)

Following a hearing conducted in the Juvenile Court on May 30, 2018, on the State's Motion to Transfer Hill for trial as an adult, the Juvenile Court found probable cause for arrest and put Hill back in detention. Two months later, the Juvenile Court entered an Order transferring Hill's case to the Criminal Court for Davidson County, Tennessee for trial and setting a $150,000 secured bond as a condition of his release. (*Id.* at 6.) Hill remained in custody at the Juvenile Detention Center until he turned 18 years old on December 21, 2018. Shortly thereafter, he was moved to the Davidson County Correctional Development Center, a jail facility operated by the Davidson County Sheriff's Office.

Meanwhile, on October 22, 2018, a Grand Jury had charged Hill and co-defendant Antonio Donte Jenkins with two counts of first-degree murder (premeditated and felony), in violation of Tenn. Code Ann. § 39-13-202, and one count of reckless endangerment, in violation of Tenn. Code Ann. § 39-13-103. (Doc. No. 14-1.) A separate, previous indictment charged two other adult individuals, Tomaz Kerley and Mohamed Miray, with first-degree murder of the same victim. (*See* Doc. No. 1-2, at 6 (referencing Case No. 2017-D-2868).) Of these individuals, Jenkins and Kerley, whose bail amounts were set at $150,000 and $200,000, respectively, were able to meet bail. (*See* Doc. No. 1-3, at 25–28.) They were released on bail subject to house arrest, GPS monitoring, and other conditions. (*See* Doc. No. 1-4, at 23, 24; Doc. No. 3, at 8.) Although Miray's bail was reduced from $500,000 to $75,000, he was not able to make bail. (*See* Doc. No. 1-4, at 25; Doc. No. 1-3, at 28.)

Counsel was appointed to represent Hill on November 15, 2018, after he had been in pretrial detention for over five months. Counsel promptly filed a Motion to Modify Conditions of Pretrial Release. (Doc. No. 1-2.) Counsel argued that the Juvenile Court had improperly set bail at $150,000 without any consideration of Hill's ability to pay or the factors relevant to his likelihood to appear in court if released pending trial. Counsel argued that the detention violated Hill's statutory and constitutional right to bail, as it amounted to, and operated as, a detention order, without the court's having made the findings required for a valid detention order. The motion sought the removal of the financial requirement and Hill's release on his own recognizance or on an unsecured bond with such non-financial conditions of release as the court found necessary to secure his appearance in court and to mitigate any risk of danger to the community.

The Davidson County Criminal Court conducted a hearing on the motion on December 6, 2018. At the hearing, Hill's aunt, Latrice Hill, testified that the petitioner had lived with her off and on over the years, as his own mother was struggling with addiction, and Latrice Hill was a family member who was willing to take care of him. (Doc. No. 1-3, at 8.[1]) She testified that Jamarius's father was incarcerated and that, if the court decided to release Jamarius pending trial and to set conditions, he could come to live with her. (*Id.* at 9.) She also testified that he would be required to work and go to school and that she never allowed firearms in her home. (*Id.* at 10–12.) She also testified that the bail set in the case, $150,000, was outside of her financial ability and that neither Jamarius nor any of his other family members had the money or assets that would allow them to meet that bail amount. (*Id.* at 13–14.) She testified specifically that she would be willing to have Jamarius live at her home with a GPS monitoring device on his leg and

---

[1] The pagination of the transcript and the CM/ECF pagination are not consistent. The court refers to the page numbers assigned by CM/ECF.

would do whatever else was required to help him abide by any conditions set by the court. (*Id.* at 15–16.) She also testified that Jamarius had done well when staying with her in the past. (*Id.* at 16.)

Officer Michael Craig, Director of Safety and Security for the Davidson County Juvenile Court, testified for the State. He testified that on April 9, 2018, following the probable-cause hearing in that court for both Jamarius Hill and co-defendant Jenkins, there was an "altercation" involving Hill, Jenkins, their family members, and the victim's mother. (*Id.* at 30.) Craig testified that this confrontation, which he described as a "tangle," consisted of the various family members "cussing and being loud and causing a disturbance out in front of the courthouse," which he was called upon to break up. (*Id.* at 32–33.) There was no testimony that Jamarius Hill, personally, was cussing or behaving inappropriately.

Officer Craig also testified regarding an incident that occurred at the May 30, 2018 hearing, at which the juvenile court ruled that Hill would be taken back into custody. The witness saw that Hill was surprised and upset about being taken into custody; he also overheard him ask his attorney why she had not warned him that that was a possibility. (*Id.* at 38–39.) Hill was allowed to make a telephone call from the courtroom. After another officer grabbed Hill by the arm, a struggle ensued. The result of it was that Hill "ended up making [his way] out into the hallway of the Court. He made it down the steps where warrant officers and G4S staff caught him at the bottom of the steps." (*Id.* at 34.)

There was no evidence that Hill failed to appear in court at any time between his initial arrest in December 2017 and the hearing on May 30, 2018.

The Criminal Court for Davidson County issued a written order on January 28, 2019, denying the Motion to Modify Conditions of Pretrial Release. (Doc. No. 1-4.) The order summarizes the evidence presented at the hearing, including Latrice Hill's testimony that she

could not post bail of $150,000, that the defendant had no assets or even a driver's license, and that none of his other family members had the resources to post bail. (*Id.* at 3.) The court also considered, over Hill's objections, the petitioner's redacted juvenile record and a recording of the transfer hearing in Juvenile Court.[2]

According to the Order, there was testimony at the transfer hearing from several witnesses concerning the evidence underlying the criminal charges. In addition, Hill's probation officer testified that the petitioner had been placed on probation after being adjudicated delinquent for aggravated robbery, criminal trespass, failure to appear, possession of a handgun, evading arrest, and theft of property. He was ordered to stay away from Metropolitan Development and Housing Authority ("MDHA") property, which included the James Cayce Homes, where the shooting death occurred. After being placed on probation, Hill had been arrested on charges of assault and criminal trespass for being on MDHA property. While on probation, he was involved with the Gang Resistance and Intervention Program ("GRIP"), the gang and community service work portions of which he successfully completed, as well as the gun safety class. In order to be referred to GRIP, an individual must have a confirmed or suspected gang affiliation. At the time of the transfer hearing, Hill was not enrolled in school or employed. The probation officer also testified that Hill had communicated with her and had been available, respectful, and cooperative while being supervised by the probation officer.

Based on the evidence before it, the Criminal Court declined to modify the conditions. The only condition of release provided by the Order was that Hill pay a secured financial bail of $150,000, which was beyond his financial means. In conducting its analysis of the motion to modify conditions, the court recognized that both the United States and Tennessee Constitutions provide guarantees of equal protection of the laws and, more specifically, that "the Court must

---

[2] The transcript of that hearing is not in the record before this court.

apply strict scrutiny" to the issue of pretrial incarceration "in order to determine whether the Defendant's constitutional rights are violated by his continued detention where a monetary bond has been set. In order for strict scrutiny to be satisfied, the State must 'demonstrate that its [action] has been precisely tailored to serve a compelling governmental interest." (Doc. No. 1-4, at 14 (quoting *Plyler v. Doe*, 457 U.S. 202, 217 (1982)).) The court continued:

> Regarding the government's interest, this Court has identified two primary interests that have led the State to seek a monetary bond—assuring the appearance of the Defendant at future court dates and ensuring the safety of the public. The Court must next consider whether the State's action of placing financial conditions on the Defendant's bond is narrowly tailored.

(*Id.* (citing Tenn. Code Ann. § 40-11-118(b)).)

In light of the Tennessee Constitution's bail guarantee to all defendants not facing capital offenses, the court considered the guidelines established by the Tennessee Bail Reform Act of 1978, Tenn. Code Ann. §§ 40-11-115 through -118. The court recognized that all of the factors listed in § 40-11-115 "relate solely to the State's interest in assuring the continued appearance of the defendant in court."[3] (Doc. No. 1-4, at 15.) Only if the reviewing court finds, based on the

---

[3] Tenn. Code Ann. § 40-11-115(a) authorizes the release of "[a]ny person charged with a bailable offense" on the person's personal recognizance or an unsecured bond. To determine whether to grant such release, the reviewing magistrate must consider eight factors:

(1) The defendant's length of residence in the community;

(2) The defendant's employment status and history, and financial condition;

(3) The defendant's family ties and relationships;

(4) The defendant's reputation, character and mental condition;

(5) The defendant's prior criminal record, including prior releases on recognizance or bail;

(6) The identity of responsible members of the community who will vouch for defendant's reliability;

(7) The nature of the offense and the apparent probability of conviction and the likely sentence, insofar as these factors are relevant to the risk of nonappearance; and

(8) Any other factors indicating the defendant's ties to the community or bearing on the risk of willful failure to appear.

relevant statutory criteria, that release upon recognizance or unsecured bond is not appropriate may the court impose conditions to help insure a defendant's appearance in court. One of these conditions is the requirement of monetary bail. (*Id.* at 15 (citing Tenn. Code Ann. § 40-11-116).) If the magistrate determines that bail is necessary, the amount must be set "'as low as the [magistrate] determines is necessary to reasonably assure the appearance of the defendant,' in consideration of the factors provided." (*Id.* at 16 (citing Tenn. Code Ann. § 40-11-118).)

The court observed that the § 40-11-118 factors are "very similar to the factors provided in § 40-11-115," the chief distinction being that "the magistrate is to set the bail amount at the lowest amount necessary to not only assure the appearance of the defendant, but also to protect the safety of the public." (Doc. No. 1-4, at 16 (citing Tenn. Code Ann. § 40-11-118(b)).) Otherwise, the judge noted that § 40-11-118 also required consideration of the defendant's financial status as "one of the factors" to be "considered in setting the bail amount." (Doc. No. 1-4, at 16.)

Based on this review of Tennessee's statutory procedure, the court concluded that Tennessee's method of determining the conditions of pretrial release was narrowly tailored and thus did not violate the Equal Protection Clause. That is, in weighing the statutory factors, including the defendant's financial status,

> the magistrate is to set the least restrictive conditions of release so as to protect both the Defendant's fundamental liberty interest and the State's compelling interests in assuring the Defendant's presence and protecting the safety of the public. Put another way, the magistrate is required, by the statute, to precisely tailor the conditions of release, based on each defendant's particular circumstances.

(*Id.* at 16.)

---

Tenn. Code Ann. § 40-11-115(b).

From there, the court determined that the manner in which the defendant's release conditions had previously been set was "precisely tailored to the State's compelling interests." (*Id.*) Without any discussion of the juvenile court's actual decision, the court concluded both that a magistrate setting bond must follow Tennessee's statutory process and that the "process has been applied to the Defendant." (*Id.* at 17.) The judge held that Hill's right to equal protection had not been violated by the fact that he had not previously been released on personal recognizance. (*Id.*)

Next, the court turned to the question of whether "the Defendant's due process rights have been violated by his continued detention on a monetary bond." (*Id.*) To find that those rights had not, the court articulated the relevant federal standards and found, first, that the detention was remedial rather than punitive and that "the mere fact that a defendant is unable to raise a set bail amount does not render the amount punitive." (*Id.* at 18 (quoting *State v. Wiggins*, No. W2000-02766-CCA-R3-CD, 2001 WL 1690193, at *8 (Tenn. Crim. App. Dec. 14, 2001)).) Second, the court concluded that

> the State's interests both in assuring the Defendant's continued presence at future court dates and protecting the safety of the public from the dangers of substance abuse [sic] qualify as interests that outweigh that liberty interest.[4] Based on the rationale discussed in finding these to be compelling interests in its equal protection analysis, the Court also finds that both interests outweigh the Defendant's liberty interest in the instant case. Thus, the Court is of the opinion that the Defendant's substantive due process rights have not been violated.

(Doc. No. 1-4, at 18.)

Turning, third, to the question of procedural due process, the court found that the hearing and proceedings before it satisfied the requirement that the defendant be given notice and a meaningful opportunity to be heard prior to any deprivation of his liberty interests and that the

---

[4] Notably, there was no evidence presented that Hill was engaged in substance abuse or had ever been arrested for dealing drugs.

defendant's "procedural due process rights have not been violated by the setting of this bond." (*Id.* at 19.)

Finally, the court turned to the question of whether the petitioner's continued detention was warranted under the Tennessee Bail Reform Act. The court found that release on personal recognizance or unsecured bond was not appropriate, "based primarily upon the defendant's juvenile record which includes delinquent adjudications for a number of offenses" which "create an increased concern for a greater risk for the likelihood of the Defendant's appearance at future court dates and the safety of the community." (Doc. No. 1-4, at 19.) The court also found that the weapons found at Hill's mother's house, an "area where the Defendant ha[d] access," as well as "the nature of the alleged offense, the probability of conviction, and the likely sentence" upon conviction "weigh[ed] significantly against the Defendant on this issue." (*Id.* at 20.) Based on those factors, the court found that release under § 40-11-115 was "inappropriate." (Doc. No. 1-4, at 20.) It then turned to the possibility of imposing conditions of release, under Tenn. Code Ann. § 40-11-116, noting that "[o]ne of the conditions of release that the Court can consider is the imposition of the deposit of bail." (Doc. No. 1-4, at 20 (citing Tenn. Code Ann. § 40-11-116(b)(3)).). The court recognized that, in setting bail, it was "required to set bail at an amount that is 'reasonably necessary to assure the appearance of the defendant while at the same time protecting the safety of the public.'" (*Id.* (quoting Tenn. Code Ann. § 40-11-118).)

The court recognized that the factors relevant to the setting of bail, itemized in § 40-11-118, are similar to those set forth in § 40-11-115(b), and, in light of the court's "great concern for the Defendant's prior juvenile record, the nature of the offense, probability of conviction and likely sentence," all of which it found relevant to the setting of bail, the court found the current bail amount of $150,000 to be appropriate. It therefore declined to reduce the bail amount and denied Hill's Motion to Modify Conditions of Pretrial Release.

The petitioner thereafter filed a Motion for Review of the trial court's order. (Doc. No. 1-5.) The Tennessee Court of Criminal Appeals denied the appeal, finding that the trial court's order showed that it had considered the "applicable statutory guidelines" when ruling on the petitioner's motion, summarized the proof presented at the hearing, and held that the petitioner did not qualify for release on his own recognizance or an unsecured bond. *State v. Hill*, No. M2019-00414-CCA-R8-CO (Tenn. Crim. App. Mar. 21, 2019), *slip op.* at 6 (Doc. No. 1-6, at 7). The appellate court recognized that the trial court "did not list out each statutory factor in its order" but nonetheless found that the lower court had conducted an individualized inquiry into the defendant's condition, as required by the state statute. *Id.* The court then turned to the trial court's consideration of the petitioner's constitutional argument: that the denial of bond violated his constitutional rights in light of his indigent status. The court rejected that argument too, quoting at length from a previous opinion addressing the same issue:

> Primarily, the Defendant makes a constitutional argument that her constitutional rights under both the Tennessee and United States Constitutions are being violated by denying her pre-trial release by making her pay a "money bail." The Defendant argues that if a person charged with a crime has no means to make a bail of any kind then the constitution requires they be released upon their own recognizance. However, the Defendant offers no authority to support this position. While the Eighth Amendment to the United States Constitution prohibits excessive bail, there is no explicit right to pre-trial bail created. *United States. v. Salerno*,481 U.S. 739, 754–55 (1987). The Tennessee Constitution addresses bail through two provisions: Article I, Section 15 stating "[T]hat all prisoners shall be bailable by sufficient sureties, unless for capital offenses . . ." and Article I, Section 16 stating "[T]hat excessive bail shall not be required." Differing from the United States Constitution, the Tennessee Constitution does guarantee a right to pre-trial bail in most cases, but does not guarantee the right to pre-trial release upon [one's] own recognizance for persons of limited means. The arguments of the Defendant exceed the constitutional rights granted. While the bail may not be "excessive," there is no absolute right to release.

*Id.* at 6–7 (quoting *State v. Pritchett*, No. W2017-02190-CCA-R3-CD (Tenn. Crim. App. Dec. 18, 2017) (Order)). Ultimately, the court found that the trial court had not abused its discretion in setting the conditions for the petitioner's pretrial release. *Id.* (citing *State v. Melson*, 638 S.W.2d

342, 358 (Tenn. 1982) ("Even if the [bond] amount set was more than [the Defendant] was in fact able to raise, there is no showing that the court's purpose in setting such amount was to prevent [the Defendant] from gaining his freedom rather than properly to assure that he would appear in court.); *State v. Wiggins,* No. W2000-02766-CCA-R3-CD, 2001 WL 1690193 (Tenn. Crim. App. May 28, 2002)).

Upon the conclusion of the state court proceedings, Hill filed his Petition in this court, asserting that his continued pretrial detention by the Davidson County Sheriff on a $150,000 bail violates his constitutional right to equal protection and due process, because the state court did not make an express finding about Hill's ability to pay the bail amount and did not find that he is a flight risk or "poses an immitigable danger to his community." (Doc. No. 3, at 6.) He requests that the court issue a writ of habeas corpus ordering his release or, in the alternative, grant a conditional writ pending a "thorough adversarial hearing that complies with the requirements for preventive detention" required by the Supreme Court. (Doc. No. 1, at 2.) His motion is supported by a Memorandum of law. (Doc. No. 3.) The State Attorney General has filed an Answer on behalf of the petitioner's custodian, asserting that the petitioner is not entitled to the relief request (Doc. No. 14), and the petitioner has filed a Reply (Doc. No. 16).

## II.      STANDARD OF REVEIW

28 U.S.C. § 2241 authorizes a district court to entertain an application for the release of any person "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). *See Phillips v. Court of Common Pleas*, 668 F.3d 804, 809 (6th Cir. 2012) ("We have long recognized that pretrial detainees pursue habeas relief . . . under § 2241."). The Sixth Circuit has expressly recognized that Section 2241 is the appropriate vehicle for a pretrial detainee to challenge an alleged constitutional violation regarding the right of bail. *Atkins v. Michigan*, 644 F.2d 543, 549 (6th Cir. 1981); *see also Hairston v. Franklin Cty. Court of*

*Common Pleas*, No. 2:17-cv-00353, 2017 WL 2972151, at *1 (S.D. Ohio July 12, 2017) ("The protection against unreasonable bail pending trial is one of a handful of special circumstances that may warrant pre-conviction habeas intervention by a federal court.").

"Unlike exhaustion under § 2254, exhaustion under § 2241 is not a statutory requirement." *Phillips*, 668 F.3d at 810 n.4. However, "in the § 2241 context, 'decisional law has superimposed such a requirement in order to accommodate principles of federalism.'" *Id.* (quoting *United States ex rel. Scranton v. New York*, 532 F.2d 292, 294 (2d Cir. 1976)). Therefore, a petitioner must first exhaust available state court remedies before filing a § 2241 petition. *See Urbina v. Thoms*, 270 F.3d 292, 295 n.1 (6th Cir. 2001) (recognizing exhaustion requirement for petitions filed under 28 U.S.C. § 2241 but finding the government waived the claim by failing to raise it on appeal). In Tennessee, pursuant to Tennessee Supreme Court Rule 39, presentation of claims to the Tennessee Court of Criminal Appeals is sufficient for exhaustion. *Adams v. Holland*, 330 F.3d 398, 403 (6th Cir. 2003).

However, the extremely deferential standard of review afforded to state court proceedings under 28 U.S.C. § 2254(d), does not apply to proceedings under § 2241. *Phillips*, 668 F.3d at 810. Instead, this court "must conduct a de novo review of the state court proceedings in addressing" a properly exhausted § 2241 petition. *Id.*

## III. ANALYSIS

The petitioner argues that his rights to equal protection and both substantive and procedural due process were violated when the state trial court ordered his continued detention on a bail set in excess of what he could afford to pay or post security for, without making an individualized determination of his ability to pay the bail amount, whether he posed a risk of flight or danger to the community, and whether there existed alternative conditions of release that could reasonably mitigate those risks. He insists, in sum, that (1) he is indigent and being

detained solely because he is indigent and unable to pay a certain sum of money, in violation of the Equal Protection Clause; (2) to satisfy due process, the government may deprive an individual of his pretrial liberty only upon showing that the detention is narrowly tailored to further a compelling government interest, and the court in this case failed to make the requisite determination that Hill's detention was required in furtherance of the government's legitimate objectives; and (3) the setting of an unattainable money bail is the equivalent of an order of detention without bail, which requires an express finding that no condition or combination of conditions of release can reasonably assure the defendant's appearance at trial and the safety of the public. (Doc. No. 3.) He also argues that the trial court was required to find by clear and convincing evidence that no non-monetary conditions of release could satisfy the purposes of bail.

The respondent maintains, to the contrary, that the trial court properly articulated the relevant statutory factors, after considering all of the evidence, and that its decision to impose bail in the amount of $150,000 established that it had determined that no non-monetary conditions or combination of conditions could satisfy the purpose of bail. (Doc. No. 14.) In his Reply, the petitioner argues that the government reads into the trial court's order findings that simply do not exist. Further, he maintains that the court's "silence or lack of explicit findings on the issue" is not sufficient to satisfy due process.

### A.    Due Process

#### 1.    *Legal Principles*

The Due Process Clause of the Fifth Amendment to the United States Constitution provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." Due process has two components: substantive and procedural. Substantive due process "prohibits States from infringing fundamental liberty interests, unless the infringement is

narrowly tailored to serve a compelling state interest." *Lawrence v. Texas*, 539 U.S. 558, 593 (2003) (citing *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997)). Procedural due process guarantees fair procedure. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). "Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." *Carey v. Piphus*, 435 U.S. 247, 259 (1978).

The essential elements of a procedural due process claim under the Fifth Amendment are "(1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process." *Fields v. Henry Cty.*, 701 F.3d 180, 185 (6th Cir. 2012); *see Thompson v. Ashe*, 250 F.3d 399, 407 (6th Cir. 2001) (citing *LRL Props. v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1108 (6th Cir. 1995)).

Liberty interests "may arise from two sources—the Due Process Clause itself and the laws of the States." *Fields v. Henry Cty.*, 701 F.3d 180, 185 (6th Cir. 2012) (quoting *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). The Constitution does not guarantee any specific type of procedure to protect the interest. *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 610 (1974). Rather, "[d]ue process is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (internal quotation marks and citation omitted); *see also Neinast v. Bd. of Tr. of Columbus Metro. Library*, 346 F.3d 585, 597 (6th Cir. 2003). "At its essence, due process can be summarized as 'the requirement that a person . . . be given notice of the case against him and [an] opportunity to meet it.'" *Shoemaker v. City of Howell*, 795 F.3d 553, 559 (6th Cir. 2015) (quoting *Mathews*, 424 U.S. at 348–49). To determine whether a particular procedure is "adequate," courts must consider and weigh several factors, including:

> [1] the private interest that will be affected by the official action; [2] the risk of an erroneous deprivation[;] . . . [3] the probable value, if any, of additional or substitute procedural safeguards; and [4] the Government's interest, including the

function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* (quoting *Mathews*, 424 U.S. at 335).

As distinct from *procedural* due process, "[s]ubstantive due process is 'the doctrine that governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed.'" *In re City of Detroit*, 841 F.3d 684, 699 (6th Cir. 2016) (quoting *Range v. Douglas*, 763 F.3d 573, 588 (6th Cir. 2014)). "The class of interests [substantive due process] protects," the Sixth Circuit has explained, "is 'narrower than those protected by procedural due process.'" *Id.* (quoting *Range*, 763 F.3d at 588 n.6). Indeed, "[s]ubstantive due process affords only those protections so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Id.* (internal quotation marks omitted) (quoting *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 862 (6th Cir. 2012)). The fundamental rights contemplated by substantive due process "are 'implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed.'" *Id.* at 700 (quoting *Glucksberg*, 521 U.S. at 721). "Substantive-due-process claims are 'loosely divided into two categories: (1) deprivations of a particular constitutional guarantee; and (2) actions that shock the conscience.'" *Doe v. Miami Univ.*, 882 F.3d 579, 597 (6th Cir. 2018) (quoting *Valot v. Se. Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1228 (6th Cir. 1997)). With respect to the first category, which is at issue here, "Government actions that burden the exercise of those fundamental rights or liberty interests are subject to strict scrutiny, and will be upheld only when they are narrowly tailored to a compelling governmental interest." *Does v. Munoz*, 507 F.3d 961, 964 (6th Cir. 2007).

The petitioner's substantive and procedural due process claims here are closely interrelated. The liberty interest at stake is actual liberty—the right of a person who has not been

convicted of a crime to be free from detention prior to trial. There is no dispute that this is a fundamental liberty interest protected by the Due Process clause, for purposes of both procedural and substantive due process. *See United States v. Watson*, 475 F. App'x 598, 601 (6th Cir. 2012) ("Pretrial detention violates the Fifth Amendment when it amounts to 'punishment of the detainee.'" (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). And the right is implicated in this case, because the petitioner has been detained prior to trial. It is equally clear that the government's interests in ensuring the petitioner's presence at court and protecting the public safety are substantial. *See United States v. Salerno*, 481 U.S. 739, 749 (1987) (noting no dispute that "an arrestee may be incarcerated until trial if he presents a risk of flight or a danger to witnesses" (citation omitted) and recognizing that the government's interest in preventing crime is compelling, particularly if the "Government musters convincing proof that the arrested . . . presents a demonstrable danger to the community").

For purposes of procedural due process, the question raised by the present petition is whether the process afforded the petitioner in the course of denying pretrial release was adequate. For purposes of substantive due process, the question is whether the trial court's order of detention in this case was narrowly tailored to the protection of the government's interests or whether, instead, the petitioner's continued detention amounts to punishment.

### 2. *Due Process and Pretrial Detention:* **Salerno**

In *United States v. Salerno*, on which the petitioner here relies heavily, the Supreme Court rejected a substantive due process challenge to the facial validity of the federal Bail Reform Act of 1984, 18 U.S.C. § 3142. The Bail Reform Act allows courts to deny bail altogether to defendants charged with certain offenses, including serious crimes of violence and serious drug offenses. To justify detention without bail, however, the government has to show probable cause that the defendant committed the crime and then prove, by clear and convincing

evidence at an adversarial hearing, that "no conditions of release can reasonably assure the safety

of the community or any person." *Salerno*, 481 U.S. at 750 (citing 18 U.S.C. § 3142(f)). The

Court first rejected the respondent's argument, premised on *Bell v. Wolfish*, 441 U.S. at 537, that

the Act violated substantive due process because it "authorized impermissible punishment before

trial." *Salerno*, 481 U.S. at 746. The Court found that pretrial detention without bail under the

federal Bail Reform Act was regulatory, as opposed to punitive, because

> (1) the Act "carefully limits the circumstances under which detention may be
> sought to the most serious of crimes," including "crimes of violence, offenses for
> which the sentence is life imprisonment or death, serious drug offenses, or certain
> repeat offenders"; (2) "[t]he arrestee is entitled to a prompt detention hearing" at
> which the arrestee could seek bail; and (3) "the maximum length of pretrial
> detention is limited by the stringent time limitations of the Speedy Trial Act."

*Lopez-Valenzuela v. Arpaio*, 770 F.3d 772, 779 (9th Cir. 2014) (quoting *Salerno*, 481 U.S. at

748).

The Court also rejected the argument that no government interest was ever sufficient to

overcome an individual's interest in pretrial liberty. While recognizing that, as a "'general rule'

of substantive due process," the government may not "detain a person prior to a judgment of

guilty in a criminal trial," such a rule is subject to numerous exceptions. *Salerno*, 481 U.S. at

749. For purposes of the issue before it, the Court found that an arrestee's fundamental interest in

pretrial liberty "may, in circumstances where the government's interest is sufficiently weighty,

be subordinated to the greater needs of society." *Id.* at 750–51. Applying heightened scrutiny, the

Supreme Court concluded that the Bail Reform Act was constitutional because it served a

"compelling" and "overwhelming" governmental interest "in preventing crime by arrestees" and

was "carefully limited" to achieve that purpose. *Id.* at 749–50, 755. The Act also carefully

delineated the circumstances under which detention would be permitted. Specifically, the Court

noted that, under the Bail Reform Act, "[d]etainees have a right to counsel at the detention

hearing" and may testify on their own behalf and cross-examine witnesses; the magistrate charged with determining whether detention is warranted is required to consider "the nature and the circumstances of the charges, the weight of the evidence, the history and characteristics of the putative offender, and the danger to the community"; the government must prove its case by clear and convincing evidence; and the judge must produce written findings of fact and a written statement of reasons for the detention. *Id.* at 751–52 (citing 18 U.S.C. § 3142(f), (g), (i)). Finally, the detainee had the right to intermediate appellate review of the decision. *Id.* at 752 (citing 18 U.S.C. § 3142(c)). The Court found, in light of the "legitimate and compelling regulatory purpose" of the Bail Reform Act and the identified procedural protections, that the Act was not facially invalid under the Due Process Clause. *Id.* at 752.

The Court held, in sum, that, while liberty prior to a conviction is "the norm" and that detention prior to, or without, trial is "the carefully limited exception," pretrial detention in accordance with the procedures established by the Bail Reform Act fall within that exception. *Id.* at 755. Specifically, the Act passed constitutional muster insofar as it authorized only the pretrial detention of "arrestees charged with serious felonies who are found after an adversary hearing to pose a threat to the safety of individuals or to the community which no condition of release can dispel," subject to the numerous procedural safeguards set forth by the Act.[5] *Id.* However, the Court did not suggest that all of these safeguards were necessary to its finding that the Act satisfied due process. Rather, it recognized that the safeguards incorporated in the Bail Reform Act were even "more exacting than those [the Court] found sufficient in the juvenile context"

---

[5] The *Salerno* Court also rejected an Eighth Amendment challenge to the Bail Reform Act. It specifically held that the Eighth Amendment's prohibition of excessive bail "says nothing about whether bail shall be available at all." 481 U.S. at 752. While the Court agreed that "a primary function of bail is to safeguard the courts' role in adjudicating the guilt or innocence of defendants," that is, by ensuring their presence at trial, "we reject the proposition that the Eighth Amendment prohibits the government from pursuing other admittedly compelling interests through regulation of pretrial release." *Id.* at 753.

and "far exceed[ed] [those] found necessary to effect limited postarrest detention" in *Gerstein v. Pugh*, 420 U.S. 103 (1975). *Salerno*, 481 U.S. at 752.

Thus, while *Salerno* provides some guidance as to what factors are relevant to a determination of whether pretrial detention without bail violates due process, its holding was limited to a determination that the federal Bail Reform Act was not unconstitutional. Beyond recognizing that heightened scrutiny applies to restrictions on a pretrial detainee's interest in liberty, it did not establish a strict threshold or enumerate required safeguards, the absence of any one of which would signal a violation of due process. It did suggest, however, that prolonged[6] pretrial detention without bail requires, at a minimum, (1) that the detainee be charged with a serious crime; (2) advance notice to the detainee of the possibility of pretrial detention without bail; (3) an adversarial hearing at which the detainee can request bail, is represented by counsel and allowed to be heard, to present witnesses, and to cross-examine the government's witnesses; and (4) findings on the record that the detainee poses an immitigable risk of flight or danger to the community, the risk of which outweighs the defendant's interest in pretrial liberty.

### 3. Indigency and Pretrial Detention

Recently, and closer to home, the Western District of Tennessee granted conditional habeas relief to a petitioner under circumstances similar to those here. In *Weatherspoon v. Oldham*, No. 17-cv-2535-SHM-cgc, 2018 WL 1053548 (W.D. Tenn. Feb. 26, 2018), the petitioner was charged in state court with first degree murder, and his bail was set at $200,000 during an initial appearance in General Sessions Court. The petitioner applied to the Shelby County Criminal Court for a bail reduction. That court conducted a hearing. The defendant called

---

[6] The Supreme Court held that the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to effect limited post-arrest detention, which must ordinarily occur within forty-eight hours of arrest. *Gerstein*, 420 U.S. at 114; *see also Salerno*, 481 U.S. at 752; *Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991).

no witnesses, but he submitted an affidavit of indigency and other exhibits. The State presented the testimony of an investigating police officer that was largely related to the underlying crime and the likelihood of conviction. At the conclusion of the hearing, the trial court found in open court that the bail amount was appropriate under Tenn. Code Ann. § 40-11-118.

After the decision was upheld on appeal, the petitioner filed his § 2241 petition in the district court, arguing that he was deprived of his pretrial liberty without due process. He specifically contested the trial court's setting of bail without considering his indigency and the availability of a less restrictive non-monetary condition or combination of conditions of pretrial release. He argued that due process required, at a minimum, "notice, a hearing at which the person can be heard, with counsel, at which a court applies a transparent and heightened legal standard (clear and convincing evidence), and issues findings on the record that the detainee poses an immitigable risk of flight or danger to the community." *Weatherspoon*, 2018 WL 1053548, at *4. He maintained that the state court failed to state its reasons on the record and that the evidence presented "could not have supported a constitutionally sufficient finding." *Id.* He argued specifically that "deliberately imposing unaffordable bail is equivalent to effective detention and requires the same procedure as a denial of bail," citing *Salerno*. *Id.* at *6. He relied as well on *Bearden v. Georgia*, 461 U.S. 660 (1983), and *Pugh v. Rainwater*, 572 F.2d 1053 (5th Cir. 1978) (en banc).

The district court considered each of those cases in some detail. In *Bearden*, the Supreme Court held that a state could not revoke probation and incarcerate an indigent defendant based solely on non-willful failure to pay a fine or restitution. *Bearden*, 461 U.S. at 672. Rather, the sentencing court "must inquire into the reasons for the failure to pay," and, "[i]f the probationer could not pay despite sufficient bona fide efforts to acquire the resources to do so," then the failure to "consider alternate measures of punishment other than imprisonment" would be

"contrary to the fundamental fairness required by the Fourteenth Amendment." *Id.* at 672–73. In *Pugh*, the Fifth Circuit rejected a constitutional challenge to Florida's bail scheme brought by pretrial detainees, who argued that, "in the case of indigents, equal protection standards require a presumption against money bail and favoring the other enumerated forms of release" set forth in the applicable rule. *Pugh*, 572 F.2d at 1056. Though it declined to hold that such a presumption was required, the court nonetheless "accept[ed] the principle that imprisonment solely because of indigent status is invidious discrimination and not constitutionally permissible." *Id.*

Based on its review of *Salerno*, *Bearden*, and *Pugh*, and various district court decisions holding that "state laws setting a particular monetary bail amount for a person's release from detention without individualized considerations of indigency violate the Due Process Clause," *Weatherspoon*, 2018 WL 1053548, at *6 (citations omitted), the district court concluded:

> When an indigent arrestee faces the possibility of pretrial detention or its functional equivalent, courts have held that the minimum process a state must provide is an opportunity to determine whether no condition or combination of conditions of release could satisfy the purposes of bail: to assure the defendant's appearance at trial or hearing and the safety of the public.

*Id.* (citing *ODonnell v. Harris Cty.*, 251 F. Supp. 3d 1052 (S.D. Tex. 2017), *aff'd as modified*, 892 F.3d 147 (5th Cir. 2018)).[7]

---

[7] The *Weatherspoon* opinion was penned in February 2018, before the Fifth Circuit withdrew the initial affirmation of the district court's opinion in *ODonnell v. Harris Cty.* and issued the superseding decision, 892 F.3d 147 (5th Cir. 2018). In *ODonnell*, the plaintiffs alleged that Harris County's system of setting bail for indigent misdemeanor arrestees violated Texas statutory and constitutional law, as well as the equal protection and due process clauses of the Fourteenth Amendment. The district court, following an eight-day hearing, granted the plaintiffs' request for an injunction. The Fifth Circuit agreed that the plaintiffs had established a likelihood of success on the merits of their claims that the county's policies violated the Fourteenth Amendment. It found, however, that the district court had defined the plaintiffs' "liberty interest under due process" too broadly and had imposed overly onerous procedures for the protection of that interest. 892 F.3d at 152. Consistently with *Pugh*, the Fifth Circuit held that

> The fundamental source of constitutional deficiency in the due process and equal protection analyses is the same: the County's mechanical application of the secured bail schedule without regard for the individual arrestee's personal circumstances. Thus, the

Applying that premise to the case before it, the district court found that the Tennessee criminal court, in conducting its review of the bail set by the General Sessions Court, failed to consider whether non-monetary conditions of release could satisfy the purposes of bail and, instead, "focused solely on the statutory bail-amount factors at Tenn. Code Ann. § 40-11-118." *Weatherspoon*, 2018 WL 1053548, at *7. When the state court applied those factors, it "considered" the petitioner's indigency and the nature of the offense and, weighing the § 40-11-118 factors, held that bail should remain at $200,000 because the petitioner "presented a risk of danger to the community." *Id.* at *7. The district court found that the process afforded Weatherspoon was inadequate, because the procedure employed by the state trial court risked an erroneous deprivation of the petitioner's liberty, insofar as it failed to include a determination of whether a non-monetary condition or combination of conditions of release could assure the petitioner's appearance at trial and the safety of the public. *Id.* (citing *Mathews v. Eldridge*, 424 I§ at 335). The court further concluded that consideration of the appropriate criteria would have imposed no additional fiscal or administrative burden on the State. However, the court rejected the petitioner's arguments that the state court's findings had to be reduced to writing or that a clear and convincing, as opposed to preponderance of the evidence, standard applied. *Id.* at *8.

Following issuance of a conditional writ, the petitioner filed an Emergency Motion for Compliance with Conditional Writ, arguing that the trial court's subsequent order, reducing bail

---

equitable remedy necessary to cure the constitutional infirmities arising under both clauses is the same: the County must implement the constitutionally-necessary procedures to engage in a case-by-case evaluation of a given arrestee's circumstances, taking into account the various factors required by Texas state law (only one of which is ability to pay).

*ODonnell*, 892 F.3d at 163–64.

to $100,000 and GPS monitoring if the petitioner could post bail, failed to comply with the conditional writ. This time around, the district court denied relief:

> The March 22, 2018 hearing complied with Due Process. After hearing proof, the state court judge addressed "the specific factors" [tracking those in Tenn. Code Ann. § 40-11-115 and 40-11-118]: "length of residence in the community," "[e]mployment status and history, financial conditions" [recognizing that he could not afford to post a bond in excess of $1,000], "family ties, relationship," "reputation, character and mental condition," "prior criminal record," "[n]ature of the offense and the apparent probability of conviction or likely sentence," and "[a]ny other factor indicating the defendant's ties to the community or bearing on the risk of a willful failure to appear." Balancing those factors, the state court found that release on recognizance was inappropriate in this case. It then decided to "reduce the bond to $100,000, [and] require GPS monitoring if Mr. Weatherspoon is able to post that bond."

(Doc. No. 14-3, at 5–6 (footnotes and record citations omitted).) Following the pronouncement of the judge's decision, the state asked for clarification that the ruling meant that the judge had determined that "no combination of pretrial release factors . . . would be sufficient." (*Id.* at 6.) The judge thanked the prosecutor for "articulating that clearly" (*id.*) and concluded:

> So I mean I'm trying to work with Defense as well as I think I can, but . . . I am not convinced that there are options available to this Court to assure the safety of the victim as well as the perhaps targeted second victim. And I just – I can't do any better than that. $100,000 and GPS monitoring.

(*Id.* (record citation omitted).)

The district court acknowledged that, because the petitioner was indigent, the $100,000 bond functioned as a detention order. It nonetheless held that his continued detention did not violate due process, because the state court, before setting bail, had "properly consider[ed] non-monetary conditions of release" and found that no non-monetary condition or combination of conditions could satisfy the purposes of bail. (*Id.* at 7.) The court rejected the petitioner's argument that the state court "could not have simultaneously complied with [the] writ and lowered Petitioner's money bail to an amount still beyond his means" and that the imposition of

GPS monitoring in the event he could raise bail "confirm[ed] that [he] can safely be released."

(*Id.* at 4.) The court disagreed:

> There is no formulaic recitation that conveys the absence of any condition or combination of conditions of release that could assure the safety of the public. The state court set bail at an amount beyond Weatherspoon's financial means because it "was not convinced that there are options available to [it] to assure the safety of the victim as well as the perhaps targeted second victim.". . . The state court's reasoning sufficiently conveys that no condition or combination of conditions of release could satisfy the purposes of bail.
>
> The state court imposed GPS monitoring in the event that Weatherspoon could post bail. That post-bail condition does not nullify the state court's finding that no non-monetary condition or combination of conditions of release would be adequate.

(*Id.* at 8.)

A number of other district courts that have considered detention under circumstances similar to that here have held that, at a minimum, to comport with due process, the court imposing detention upon an indigent defendant must both expressly consider and make findings of fact on the record regarding the defendant's ability to pay the bail amount imposed and whether non-monetary alternatives could serve the same purposes as bail. *See, e.g.*, *Knight v. Sheriff of Leon Cty.*, 369 F. Supp. 3d 1214, 1219 (N.D. Fla. 2019) (recognizing that "[a] system that unnecessarily detains defendants pending trial based on inability to make bail—that detains defendants on this basis without regard to the state's compelling interests in detention—is unconstitutional at several levels"); *Caliste v. Cantrell*, 329 F. Supp. 3d 296, 314–15 (E.D. La. 2018) ("[I]n the context of hearings to determine pretrial detention[,] Due Process requires: 1) an inquiry into the arrestee's ability to pay . . . ; 2) consideration of alternative conditions of release, including findings on the record applying the clear and convincing standard and explaining why an arrestee does not qualify for alternative conditions of release; and 3) representative counsel."),

*aff'd on other grounds*, No. 18-30954, —F.3d —, 2019 WL 4072068 (5th Cir. Aug. 29, 2019)[8];

*Schultz v. State*, 330 F. Supp. 3d 1344, 1358 (N.D. Ala. 2018) (holding that "criminal defendants

have a constitutional right to pretrial liberty," that, "[a]bsent extenuating circumstances like

flight risks or dangers to the community, the State may not incarcerate a defendant pretrial," and

that the plaintiffs had established a substantial likelihood of success on the merits of their claim

that Cullman County's bail schedule violated due process, insofar as it failed to ensure adequate

notice to defendants and an opportunity to be heard, did not establish a clear evidentiary

standard, and did not require actual factual findings by the judge setting bail); *Coleman v.

Hennessy*, No. 17-cv-06503-EMC, 2018 WL 541091 (N.D. Cal. Jan. 5, 2018 (conditionally

granting § 2241 petition, finding a violation of due process where the state judge failed to

consider the defendant's ability to pay the bail amount or whether non-monetary alternatives

could serve the same purposes as the financial condition of release); *Rodriguez-Ziese v.

Hennessy*, No. 5:17-CV-06473-BLF, 2017 WL 6039705 (N.D. Cal. Dec. 6, 2017) (same).

### 4.     *The Case at Bar*

#### a)      *The Trial Court's Determination*

As in *Weatherspoon*, the argument in this case is that the state court's order setting bail at

an amount Hill had no ability to raise is effectively an order of detention, but that the state court

did not make the individualized findings necessary to justify the detention.

---

[8] The defendant, a state-court judge, did not appeal this portion of the district court's ruling. He appealed only the holding that a Louisiana law created a conflict of interest and violated due process to the extent it permitted the judges making pretrial release decisions in the Orleans Parish Criminal District Court to benefit, at least indirectly, each time they required a defendant to obtain a secured money bond, because whenever a defendant had to buy a commercial surety bond, a portion of the bond's value went into a fund for judges' expenses. *Caliste*, 2019 WL 4072068, at *1. The Fifth Circuit affirmed the district court's determination that this structure violated due process.

The Tennessee constitution guarantees that "all prisoners shall be bailable by sufficient sureties, unless for capital offences, when the proof is evident, or the presumption great." Tenn. Const. art. 1, § 15. The Tennessee Release from Custody Bail Reform Act provides that all defendants, except those charged with capital offenses, are presumed bailable. Tenn. Code Ann. § 40-11-102. Courts applying the Act must first consider releasing the bailable defendant on the defendant's own recognizance or an unsecured bond. Tenn. Code Ann. § 40-11-115(b); *Graham v. Gen. Sessions Court*, 157 S.W.3d 790, 793 (Tenn. Ct. App. 2004). As set forth above, that determination requires consideration of a number of factors that relate solely to the need to assure the defendant's appearance at trial. *See Graham*, 157 S.W.3d at 793 ("A defendant may be released pending trial upon the defendant's own recognizance if the appearance of the defendant can be reasonably assured, in light of several factors set out in the statute." (citing Tenn. Code Ann. § 40-11-115)).

If the statutory factors do not support release on the defendant's own recognizance or on an unsecured bond under § 40-11-115, the court is then to consider imposing conditions of release. The court must "impose the least onerous conditions reasonably likely to assure the defendant's appearance in court." Tenn. Code Ann. § 40-11-116(a). The conditions that may be imposed include:

> (1) [r]eleas[ing] the defendant into the care of some qualified person or organization responsible for supervising the defendant and assisting the defendant in appearing in court . . . ;
>
> (2) [i]mpos[ing] reasonable restrictions on the activities, movements, associations and residences of the defendant; and/or
>
> (3) [i]mpos[ing] any other reasonable restriction designed to assure the defendant's appearance, including, but not limited to, the deposit of bail pursuant to § 40-11-117.

Tenn. Code Ann. § 40-11-116(b). In other words, like § 40-11-115, the factors the courts are to consider are focused solely on assuring the defendant's presence at trial.

Although bail is one of the factors that may be considered under § 40-11-116, the Tennessee statute indicates that, only if the court determines that "conditions on a release on recognizance" have not been shown to reasonably assure the defendant's appearance, *then* the magistrate "shall, in lieu of the conditions of release set out in § 40-11-115 or § 40-11-116, require bail to be given." Tenn. Code Ann. § 40-11-117. *See Graham*, 157 S.W.3d at 793 ("If it is not shown that conditions on a release on recognizance will reasonably assure the defendant's appearance as required, the magistrate shall require that bail be given in lieu of conditions of release.").

Section 40-11-118 governs the procedures to be followed in the setting of bail, which must be set "as low as the court determines is necessary to reasonably assure the appearance of the defendant as required." Tenn. Code Ann. § 40-11-118(a). However, somewhat inconsistently, the statute then states that, "[i]n determining the amount of bail necessary to reasonably assure the appearance of the defendant *while at the same time protecting the safety of the public,*" Tenn. Code Ann. § 40-11-118(b), the court is to consider a number of facts that nearly mirror those of § 40-11-115(b) (*see* Note 3, *supra*). The most notable distinction between the -115 and -118 factors is that the latter include consideration of "the likelihood that . . . the defendant will pose a risk of danger to the community" as a factor to be considered in setting the amount of bail. Tenn. Code Ann. § 40-11-118(b)(7). The remaining factors, again, are focused on "the defendant's ties to the community" and "the risk of the defendant's willful failure to appear." *Id.* § 40-11-118(b)(1)–(6), (8)–(9). Despite this focus, however, the Sixth Circuit has held that Tennessee law does not prohibit monetary bail even if conditions of release can reasonably assure the defendant's appearance. *Fields v. Henry Cty.*, 701 F.3d 180, 187 (6th Cir. 2012) (citing

*Malmquist v. Metro. Gov't*, No. 3:10-cv-1014, 2011 WL 5982670, at *10–11 (M.D. Tenn. Nov. 29, 2011)). It has also expressly recognized that, "[i]n Tennessee, bail is the norm, not the exception." *Id.* Thus, "[t]o be released on his own recognizance, a defendant must demonstrate that bond is not necessary to assure his appearance." *Id.* (citing Tenn. Code Ann. § 40-11-117).

In Hill's case, the trial court conducted a full-blown hearing to consider Hill's Motion to Modify Conditions of Pretrial Release. Following the hearing, the trial court issued a lengthy written opinion in which it clearly articulated the constitutional and state statutory factors relevant to the determination of whether the juvenile court's setting of the bail amount in Hill's case violated his equal protection or due process rights and whether modification of the conditions going forward was warranted. The court determined, in effect, that the statute adequately protected the defendant's constitutional rights, that all judges must follow the statute, and, consequently, that the defendant's rights had not been violated by the juvenile court's setting of the bail amount:

> In light of this extensive process, the Court is of the opinion that Tennessee's method of determining the conditions of pre-trial release on recognizance or bail is narrowly tailored. Any magistrate who is setting the conditions of release must follow the aforementioned process, considering each defendant's particular circumstances with the guidance of numerous factors, including that particular defendant's financial status or indigency. In applying that process, the magistrate is to set the least restrictive conditions of release so as to protect both the Defendant's fundamental liberty interest and the State's compelling interests in assuring the Defendant's presence and protecting the safety of the public. Put another way, the magistrate is required, by the statute, to precisely tailor the conditions of release, based on each defendant's particular circumstances. Accordingly, the Court is of the opinion that this process does not violate the Equal Protection Clause.
>
> In the present case, the Court finds that the manner in which the Defendant's release conditions have been set is precisely tailored to the State's compelling interests of assuring the Defendant's appearance at court and protecting the safety of the public, in conjunction with the Defendant's liberty interests. In reviewing the bail set in this case, this Court considers the appropriate conditions of release according to the aforementioned statutory guidance. In light of both the extensive process magistrates in Tennessee must follow in determining conditions of release

based on each defendant's circumstances, and the fact that the process has been applied to the Defendant, the Court finds that the Defendant's constitutional right to equal protection under the law has not been violated by the fact that he has not been released on personal recognizance.

. . . .

[Likewise], the State's interests both in assuring the Defendant's continued presence at future court dates and protecting the safety of the public from the dangers of substance abuse qualify as interests that outweigh that liberty interest. Based on the rationale discussed in finding these to be compelling interests in its equal protection analysis, the Court also finds that both interests outweigh the Defendant's liberty interest in the instant case. Thus, the Court is of the opinion that the Defendant's substantive due process rights have not been violated.

. . . .

[Because the defendant received notice and an opportunity to be heard, t]he Court is of the opinion that [the procedural due process requirements have] been fulfilled in the instant case by virtue of the immediate proceeding before this Court. Additionally, in weighing the Defendant's procedural due process interests, this Court considers all of the statutory factors set forth in Tenn. Code Ann. § 40-11-118, as well as the proof presented on the Defendant's behalf at the hearing in this matter. Accordingly, the Court is of the opinion that the Defendant's procedural due process rights have not been violated by the setting of his bond.

(Doc. No. 1-4, at 16–19.)

In conducting the statutory analysis to determine whether maintaining the $150,000 bail amount was warranted, the court did not actually follow the statutory steps. Instead, the court went directly to Tenn. Code Ann. § 40-11-118, determined that the defendant posed a threat to the community, and set his bail at an amount the court knew he could not pay. Although the court stated that it deemed that amount necessary to "assure the Defendant's appearance at future court dates and protect the safety of the public" (Doc. No. 1-4, at 20), it did not make an express finding about his ability to pay or point to any specific evidence in the record that would support a conclusion that Hill posed a risk of flight or non-appearance. The court did not consider or address whether any non-monetary factors would be sufficient to assure the defendant's appearance. Nonetheless, the court affirmatively held that the state's interests in assuring the

presence of the defendant at future court dates and in ensuring the safety of the public "outweigh[ed] the Defendant's liberty interest in the instant case." (Doc. No. 1-5, at 51.)

<em>b)</em>      <em>Procedural Due Process</em>

This court is persuaded that, procedurally, Hill received all the process to which he was due: an individualized hearing of which he had adequate advance notice and where he was represented by counsel and permitted to present witnesses and cross-examine the government's witnesses. He was permitted an appeal of the denial of his motion to modify the conditions of detention. *See Salerno*, 481 U.S. at 750–51 (concluding that the federal Bail Reform Act accorded adequate process insofar as it required "findings of fact, statements of reasons for decisions, and the right to counsel").

The only close call is whether the trial court's apparent application of a preponderance-of-the-evidence standard is appropriate. Relying on *Salerno*, Hill argues that the preponderance of the evidence standard "is insufficient for hearings that result in the deprivation of a fundamental right" and that the Supreme Court has held that the "'fundamental nature' of a defendant's liberty interests may be subordinated to the 'greater needs of society' only in carefully delineated circumstances." (Doc. No. 3, at 24 (quoting *Salerno*, 481 U.S. at 750–51).) In other words, he argues that the government must prove by clear and convincing evidence, rather than merely a preponderance of the evidence, that an arrestee "presents an identified and articulable threat to an individual or the community" to justify detention. (*Id.* (quoting *Salerno*, 481 U.S. at 751).) The petitioner raised this argument in *Weatherspoon* as well, but the Western District of Tennessee rejected it, noting that the clear and convincing evidence standard applied in *Salerno* only because the federal Bail Reform Act specifically calls for clear and convincing evidence. *Weatherspoon*, 2018 WL 1053548, at *8 ("Under the federal Bail Reform Act, the government must meet a clear and convincing standard of proof. The Tennessee Bail Reform Act

establishes a preponderance of the evidence standard. That lower standard is not a constitutional violation." (citations omitted)).

Hill, however, argues that the Supreme Court has repeatedly held that clear and convincing evidence applies "where individual interests at stake in a state proceeding are both 'particularly important' and 'more substantial than mere loss of money.'" (Doc. No. 3, at 25 (quoting *Santosky v. Kramer*, 455 U.S. 745, 756 (1982); *Addington v. Texas*, 441 U.S. 418, 424 (1979); citing *Cruzan by Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261 (1990)).)

The court is not persuaded. *Santosky* involved the complete and irrevocable severance of parental rights. In that context, the Supreme Court held that, in light of a parent's fundamental liberty interest in the care, custody, and management of his or her child, due process required the state to prove by clear and convincing evidence its allegations that the child was "permanently neglected" before a parent's rights could be terminated. *Santosky*, 455 U.S. at 769. In *Cruzan*, the guardians of a patient in a persistent vegetative state sought a declaratory judgment authorizing the termination of artificial hydration and nutrition for the patient. The Court recognized that a competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment. It nonetheless held that the Due Process Clause did not forbid the state from requiring clear and convincing evidence of an incompetent's wish for the withdrawal of life-sustaining treatment, in light of the state's legitimate interest in the preservation of human life. The court stated: "The function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of factfinding, is to instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication." *Cruzan*, 497 U.S. at 282 (quoting *Addington*, 441 U.S. at 423). That is, "[t]he more stringent the burden of proof a party must bear, the more that party bears the risk of an erroneous decision." *Id.* at 283. The Supreme Court noted that it had applied

that standard in the context of deportation proceedings, denaturalization proceedings, civil commitment proceedings, and in proceedings for the termination of parental rights. *Id.* at 282 (citations omitted).

Each of these cases involved some type of permanent or irrevocable termination of a fundamental right or loss of liberty. The petitioner has not pointed to any Supreme Court case holding that this level of proof is *required* in the context of bail proceedings. The Court, instead, has recognized that the burden of proof in the context of a fundamental right must be weighed against the government's interest and involves an allocation of the risk of error. While a criminal defendant cannot be convicted unless the "beyond a reasonable doubt standard" is met, a pretrial detainee may be subjected to various "restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment," do not "otherwise violate the Constitution," and are "reasonably related to a legitimate governmental objective." *Bell*, 441 U.S. at 536–37. The court finds that the preponderance of the evidence standard is appropriate in this context, where the government's strong and compelling interests in protecting the safety of the community and in ensuring the defendant's appearance in court must be weighed against the individual's right to personal liberty pending trial. In the absence of persuasive precedent to the contrary, the court finds that the preponderance of the evidence standard is sufficient to protect a defendant's rights.

c)       *Substantive Due Process*

Substantively, the question, again, is whether the trial court's order of detention in this case was narrowly tailored to the protection of the government's interests or whether, instead, the petitioner's continued detention amounts to punishment. In that regard, although the *Salerno* Court did not suggest that all of the safeguards implemented by the federal Bail Reform Act were required by substantive due process in order for the government to establish that detention in a

particular case, was "narrowly tailored" to further the government's compelling interests, the case at least provides some guideposts. The Court recognized, in particular, as did the trial court in this case, that the needs to assure a defendant's appearance at trial and to prevent crime or protect the public safety are compelling government interests. The *Salerno* Court suggested that, to ensure that the curtailment of a pretrial detainee's liberty is narrowly tailored to further those interests, courts must, at a minimum, find that an arrestee charged with serious felonies "pose[s] a threat to the safety of individuals or to the community which no condition of release can dispel." *Salerno*, 481 U.S. at 755. Federal courts considering bail in the context of indigent detainees have held that due process also requires the state to make an individualized inquiry into the detainee's ability to pay and explain on the record why the arrestee does not qualify for alternative conditions of release. *See, e.g.*, *Caliste*, 329 F. Supp. at 314–15.

The trial court in this case acknowledged and summarized all of the testimony and the defendant's arguments. Although it did not expressly acknowledge, in the analysis section of its opinion, that the defendant did not have the funds to satisfy the bail amount set or expressly articulate its analysis of whether the imposition of other non-monetary conditions would have also been sufficient to protect the government's admittedly compelling interests, it did specifically include in its summary of the evidence the petitioner's aunt's testimony that the family did not have funds to post bail, and it found that "release on personal recognizance or unsecured bond in this case is not appropriate." (Doc. No. 1-4, at 19.) It then turned to Tenn. Code Ann. § 40-11-116 and, although it failed to acknowledge that the statute requires the court to "impose the least onerous conditions reasonably likely to assure the defendant's appearance in court," Tenn. Code Ann. § 40-11-116(a), the court recognized that bail is one of the conditions the court can impose. (Doc. No. 1-4, at 20.) The court held that bail in the amount of $150,000 was the amount "reasonably necessary to assure the appearance of the defendant while at the

same time protecting the safety of the public." (*Id.* (quoting Tenn. Code Ann. § 40-11-118).) The court emphasized, in particular, the evidence in the record regarding the defendant's numerous adjudications while a juvenile, the finding of weapons at his mother's house, to which he had access, and the reasonable probability of the defendant's conviction on the underlying charges, all offenses that carry significant sentences, as creating "an increased concern for a greater risk for the likelihood of the Defendant's appearance at future court dates and the safety of the community." (Doc. No. 1-4, at 19–20.) That is, based on the evidence before it, the court implicitly concluded that bail at a lesser amount, even with the imposition of non-monetary conditions, would not adequately protect the government's stated interests. *See Salerno*, 481 U.S. at 749 ("The government's interest in preventing crime by arrestees is both legitimate and compelling.").

To be clear, it appears to this court that the trial court did not actually follow Tennessee law: she did not consider the factors identified in § 40-11-115 for their relevance to the question of whether the petitioner poses a risk of flight or non-appearance. There was no evidence in the record, under the statutory factors, that he did. All of his family and friends are local; he does not have a job, money, a car or a driver's license. There was no indication in the record that he had ever previously failed to appear at court when required. Rather, the court eyed the factors enumerated in § 40-11-115 (and -118) for their relevance to the question of the likelihood of conviction and the safety of the community. (*See* Doc. No. 1-4, at 19–20.) As the Sixth Circuit has recognized, however, release under § 40-11-115 is discretionary, not in any sense mandatory. *Fields*, 701 F.3d at 187 ("Section 40–11–115 clearly gives the magistrate discretion in deciding whether to order release on personal recognizance. The provision states that a magistrate "may" order individuals charged with bailable offenses to be released on their personal recognizance.").

Section 40-11-116(a), on the other hand, is mandatory: it requires—with the use of the word "shall"—the state judge to impose the "least onerous conditions reasonably likely to assure the defendant's appearance at court." It then authorizes ("may") the court to impose any reasonable restriction designed to assure the defendant's appearance," including bail. *Id.* § 40-11-116(b). The trial court did not expressly consider any other conditions of release and, instead, skipped straight to the question of whether the defendant posed a risk of harm to the public, one of the factors to be considered in the setting of bail under § 40-11-118. Although § 40-11-117 expressly authorizes bail only in the "absen[ce of] a showing that conditions on a release on recognizance" with the conditions identified in §§ 40-11-115 and -116 "will reasonably assure the appearance of the defendant as required," the Sixth Circuit has nonetheless held that bail is the "norm," rather than the "exception," in Tennessee.

This court, however, is not called upon to consider whether the state court actually followed Tennessee law as written, but whether such failure violates the federal constitution.[9] This court cannot conclude that it did. While the setting of bail at $150,000, with full knowledge that the defendant would be unable to post bail in that amount, clearly amounted to a *de facto* detention order, the state court conducted an individualized assessment of Hill's circumstances, considered all of the evidence in the record, and concluded, based on the evidence before it, that the defendant posed a risk of harm to the public, as a result of which release on recognizance or conditions was not warranted. Although this court's review is *de novo*, the trial court, not this court, had the benefit of assessing the credibility of the witnesses at the hearing and also had before her the transcript of the hearing on whether to transfer the defendant to be tried as an

---

[9] The Sixth Circuit has held that the Tennessee Bail Reform Act does not guarantee that a defendant will be released on his own recognizance or unsecured bond. *See Fields*, 701 F.3d at 187 ("Since Tennessee law does not mandate release on personal recognizance, it lacks the 'explicitly mandatory language' needed to create a liberty interest." (quoting *Gibson v. McMurray*, 159 F.3d 230, 233 (6th Cir. 1998)).

adult. The court is not in a position to second guess the court's credibility findings or its determination that the defendant posed a substantial risk of harm to the community.

This case, in short, is not about indigency. It is about the Tennessee state courts' failure to acknowledge the lack of any logical connection between the amount of bail and mitigation of a detainee's risk of harm to the public. Either a detainee poses a risk of harm to the public or he does not. Releasing him on bail, at whatever amount, would not reduce that risk. But, because the Tennessee constitution guarantees a right to bail, the Tennessee courts appear to use unattainable bail amounts as a proxy for denying bail altogether. If Hill were not indigent—if, for example, he had an income of $100,000 per year and owned a $200,000 house and other assets—and his bail were set at an amount he could not post, say $500,000 instead of $150,000, then the outcome, in all likelihood, would be the same. He could still argue that setting bail at an amount he could not afford amounts to a *de facto* detention order. However, for substantive due process to be satisfied, what is required is an individualized determination that the defendant poses a risk of harm to the public safety and, therefore, that a detention order is narrowly tailored to the state's interest in protecting the public safety.

The trial court's assessment is problematic under state law, insofar as it fails to acknowledge that the setting of bail in this case amounts effectively to an order of detention without bail. It is also troubling that the court referred to protecting the public "from the dangers of substance abuse" (Doc. No. 1-4, at 18), when there was no evidence that the petitioner used or sold drugs. Finally, the court did not expressly consider, on the record, whether non-monetary conditions of confinement, including GPS monitoring and limitations on the defendant's travel and associations, could effectively mitigate the government's admittedly compelling interests in insuring his appearance in court and protecting the public safety. The court, however, cannot find that Hill's right to procedural or substantive due process was violated, given the particular facts

of this case and the trial court's exhaustive factual summary, correct articulation of the legal standards, and particularized findings.

## B. Equal Protection

Hill also argues that the trial court's failure to consider his indigency in setting the bail amount violates his right to equal protection. The Supreme Court has not expressly addressed the issue presented here, but in *Pugh v. Rainwater*, 572 F.2d 1053 (5th Cir. 1978) (*en banc*), the Fifth Circuit addressed an equal protection challenge to Florida's pretrial bail scheme, which is not dissimilar to Tennessee's. The rule in question enumerated six forms of pretrial release in non-capital cases, of which cash bail was one. *Id.* at 1055. The plaintiffs argued that, "in the case of indigents, equal protection standards require a *presumption* against money bail and *favoring* the other enumerated forms of release." *Id.* at 1056 (emphasis added). As discussed above, the court ultimately rejected that challenge, but in doing so, it addressed general constitutional principles governing the calculation of bail.

Specifically, the court "accepted the principle that imprisonment solely because of indigent status is invidious discrimination and not constitutionally permissible." *Id.* (citation omitted). It reasoned that any bail requirement in excess of that required to assure the defendant's presence at trial "would be inherently punitive and run afoul of due process requirements." *Id.* at 1057; *see also id.* ("The incarceration of those who cannot [pay bail], without meaningful consideration of other possible alternatives, infringes on both due process and equal protection requirements.").

As set forth above, however, the trial court made a finding that Hill's detention was not punitive. The court was clearly aware of Hill's indigency and nonetheless set bail at an amount it determined was necessary to protect the state's interests in assuring his presence at trial and in protecting the safety of the public. Although two of Hill's co-defendants were released on bail,

Hill has not made a showing that their factual situations, including the strength of the charges against them and their personal histories, were similar to Hill's.

Unlike nearly every case to which the plaintiff cites, this case did not involve a bail chart and the imposition of bail without regard to Hill's particularized situation. There are simply not sufficient facts presented here from which the court can conclude that Hill was imprisoned solely because of his indigent status or that he was the victim of invidious discrimination on the basis of his financial status. Essentially for the same reasons as those discussed above, the court finds that Hill's right to equal protection was not violated.

## IV.    CONCLUSION

For the reasons set forth herein, the court will deny the petition under § 2241.

The Sixth Circuit has not yet determined whether a certificate of appealability (COA) is required to appeal a denial of a 28 U.S.C. § 2241 petition where the petitioner is challenging state pretrial detention. *See Christian v. Wellington*, 739 F.3d 294, 292 n.5 (6th Cir. 2014) (noting that it did not have to decide the question there, because the district court had granted a certificate of appealability). District courts within the Sixth Circuit have typically found that a certificate of appealability is required to appeal under these circumstances. *See, e.g.*, *Smith v. Burt*, No. 2:19-CV-10159, 2019 WL 529281, at *3 (E.D. Mich. Feb. 11, 2019) (declining to issue a certificate of appealability based on the failure to make a substantial showing of the denial of a constitutional right); *see also* 28 U.S.C. § 2253(c)(1)(A) (requiring a certificate of appealability to appeal "the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court"); *Greene v. Tenn. Dep't of Corrs.*, 265 F. 3d 369, 372 (6th Cir. 2001) (holding that a state prisoner seeking habeas corpus relief under § 2241 based on the denial of sentencing credits must obtain a certificate of appealability to bring an appeal).

Whether a certificate is needed or not, this court finds that the petitioner has "made a substantial showing of the denial of a constitutional right," *id.* § 2253(c)(2), insofar as he asserts that his rights to due process and equal protection have been violated by his pretrial detention at an insurmountable bail amount, without the trial court's having made particularized findings that pretrial release with non-monetary conditions would adequately protect the state's compelling interests. Accordingly, the court will grant a certificate of appealability.

An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge